El Pueblo de Puerto Rico, demandante y apelado, *v.* Carlos Rivera, acusado y apelante.

No. 3263.—*Visto:* Noviembre 15, 1927. *Resuelto:* Abril 28, 1928.

R. *Martínez Nadal* y *Arcilio Alvarado,* abogados del apelante; *José* E. *Figueras,* abogado de *El Pueblo,* apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

El acusado fué declarado culpable del delito de violación. Como apelante, admite que de acuerdo con la jurisprudencia de California un hombre que tiene comercio carnal con una mujer que no puede prestar su consentimiento para dicho acto, es culpable de violación. Según la prueba presentada en este caso, no hay duda alguna que el jurado tenía derecho a creer que la joven en cuestión estaba loca a un extremo tal que no podía consentir al acto carnal. El apelante solicita de esta corte que no siga la jurisprudencia de California, sino que determine por sí misma la ley. Insiste en que la ley debe ser en el sentido de que un hombre no debe ser declarado culpable del delito de violación cuando la mujer aparentemente da su consentimiento y el acusado no tiene motivo alguno para creer que ella está loca. El error señalado a este respecto se dirige a las instrucciones de la corte que fueron dadas en sentido contrario.

La idea, según ha sido presentada en el alegato y durante la vista, es que la ciencia moderna ha reconocido varias clases de demencia, y que una mujer puede ser loca y sin embargo parecer lo contrario. En el curso de su alegato el apelante sostiene que en tal caso no puede haber acto criminal alguno, toda vez que no ha mediado la intención criminal. No hallamos motivo alguno para discutir la cuestión de intención criminal, ya que el caso debe ser resuelto por otros fundamentos.

Nuestra decisión se basa en las palabras del estatuto mismo.

"Se comete violación, yaciendo con una mujer que no fuere la propia, en cualquiera de los casos siguientes:

"1. Si la mujer fuere menor de catorce años.

"2. Si por demencia u otro defecto mental, temporal o permanente, estuviere incapacitada para consentir legalmente.

"3. Si estuviere impedida de oponer resistencia a causa de amenazas de grave e inmediato daño corporal, acompañadas de la aparente aptitud para ejecutarlas, o por efecto de cualquier narcótico o anestésico, administrado por el reo, o con conocimiento de éste.

"4. Si opusiere resistencia, pero ésta fuere vencida por fuerza o violencia.

"5. Si al tiempo de cometerse el acto, no tuviere ella conciencia de su naturaleza, y esta circunstancia fuere conocida por el acusado.

"6. Si se sometiere en la creencia de que el acusado era su marido, debido a alguna treta, simulación u ocultación puesta en práctica por el acusado para inducirla en tal creencia." Artículo 255 del Código Penal, página 952 de los Estatutos Revisados.

California tiene un estatuto similar, y en el caso de *People* v. *Griffin*, 117 Cal. 583, la corte dijo:

"Cuando la mujer con quien se realizó el acto carnal estaba en realidad mentalmente enferma a un grado tal que no podía dar su consentimiento legal, la persona que comete ese acto lo hace a su propio riesgo, y, estando presente un designio ilegal, ese designio ilegal se convierte en una intención criminal cuando se demuestra que existen los hechos a cuyo riesgo él actúa, y no es excusa alguna del delito que el acusado no supiera o tuviera motivos para creer que la mujer estaba incapacitada para prestar legalmente su consentimiento."

Sin embargo, la decisión de la corte sigue el estatuto, el cual señala como un delito específico el hecho de que un hombre tenga comercio carnal con una mujer demente. El conocimiento de que la mujer está loca no desempeña papel alguno. La Legislatura, al igual que en otros delitos estatutorios, como por ejemplo, en los casos de adulteración de leche, ha dejado a un lado la cuestión del conocimiento. El estado de Minnesota tiene un estatuto similar. En el caso de *State* v. *Dombroski*, 176 N. W. 985, la corte asume la misma posición que la adoptada por la corte de California. Después de exponer que la Legislatura había omitido intencionalmente el elemento del conocimiento, dijo:

". . . . El resultado expresado parece claro, y concuerda con la regla de interpretación seguida en cuanto a otros delitos estatutorios. Es consistente y está en armonía con la regla aplicada en los procesos que envuelven la edad de la querellante, siguiendo la cual prácticamente casi todas las cortes han resuelto que la creencia honrada del acusado de que la mujer había llegado a la edad en que podía prestar consentimiento, cuando en realidad no había llegado

a ella, no constituye defensa alguna. (Citas.) También está en armonía con las autoridades que se ciñen a la regla de que, en ausencia de un estatuto que disponga lo contrario, la venta de bebidas embriagantes a las personas a quienes está prohibido hacérsela— menores, ébrios habituales y personas intemperantes—constituye una infracción de la ley, independientemente del conocimiento de parte de la persona que vende respecto a la edad y costumbres del que compra. En tales casos el vendedor está obligado a saber, a su propio riesgo, si legalmente puede venderle a determinada persona. (Citas.) No nos detendremos a investigar si la diferencia respecto a los puntos de vista tomados por las cortes debe hallarse en las disposiciones estatutorias o en la aplicación y alcance de las reglas del derecho común. Nuestra decisión se basa en los estatutos de éste estado, los que a nuestro juicio claramente eliminan el elemento del conocimiento e intención en cuanto al delito determinado. Sostenemos, por tanto, las instrucciones de la corte sentenciadora.''

En el estado de Missouri, donde aparentemente no existe un estatuto como el nuestro, las cortes están enteramente en armonía con la posición del apelante. *State* v. *Warren*, 232 Mo. 185, 134 S. W. 522, Ann. cas. 1912–B 1042; *State* v. *Schlichter*, 173 S. W. 1072, 263 Mo. 561.

En una nota que aparece en Annotated Cases, *supra,* siguiendo el caso de *State* v. *Warren*, puede verse que hay otras cortes que probablemente decidirían lo mismo que el Estado de Missouri. Esto resuelve el primer señalamiento de error.

El apelante está enteramente en lo cierto al sostener que la locura debe ser de tal naturaleza que impida que una mujer preste legalmente su consentimiento. En este caso, a juzgar por la declaración del Dr. Goenaga y de otras personas, la perjudicada carecía de capacidad para dar su consentimiento en forma legal. El tercer señalamiento de error es que el veredicto es contrario a la prueba, pero hallamos que ésta es suficiente.

El segundo señalamiento de error se refiere a la actitud de la corte al negarse a admitir una carta escrita por la perjudicada. El negarse a admitir la carta se debió

a que la letra de la perjudicada no había sido identificada debidamente. Una testigo, la esposa del acusado, trató de identificar la letra, pero en ningún momento dijo algo que sentara una base adecuada para la admisión del documento. Hubo otro testigo que dijo que conocía la letra de la perjudicada, que la había visto escribir tres o cuatro años antes, cuando ella era su condiscípula. En otras palabras, admitió que su conocimiento se basaba en la experiencia tenida por él desde hacía muchos años. Sin embargo, el testigo dijo también que Epigménea Pagán (la perjudicada) siempre estaba escribiendo canciones, que la había visto trabajando, y había visto algunos de sus escritos cuando él visitaba la casa del acusado, de quien era amigo. La corte no halló que tal base fuera suficiente para admitir la carta, probablemente en parte porque no creyó que el testigo en realidad conociera la letra de la perjudicada.

No trataremos de decidir definitivamente en un caso en que la cuestión ha sido discutida tan someramente, si una corte tiene derecho a negarse a admitir como prueba una carta, por no creer la declaración del testigo que trata de identificar la letra. No haremos esto por varios motivos. En primer lugar, convenimos con el Fiscal en que una carta aislada demostrativa de algunos indicios de inteligencia no hubiera tendido a demostrar que la perjudicada tenía suficiente inteligencia para prestar su consentimiento en este caso. Nos inclinamos a creer que la prueba era impertinente, pero, de todos modos, el negarse a admitir la carta fué un error inofensivo. Además, no hallamos que la carta fuera copiada en los autos, y tampoco se nos muestra en forma alguna su contenido.

Por regla general, cuando una parte desea que este tribunal revise la actuación de la corte inferior al negarse a admitir determinada prueba documental, el contenido de esa prueba debe ser traído a esta corte en alguna forma, a fin de que podamos resolver acerca de su importancia o

·pertinencia. Nos inclinamos a creer que no se cometió error alguno, y no hallamos que hubiera perjuicio.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Sr. Texidor no intervino.